ROSEMARY BURNS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Burns v. Commissioner
Docket No. 6908-87
United States Tax Court
T.C. Memo 1989-395; 1989 Tax Ct. Memo LEXIS 395; 57 T.C.M. (CCH) 1141; T.C.M. (RIA) 89395; July 31, 1989
Steven S. Brown, Leigh D. Roadman, and Martin Cohn for the petitioner. Luanne S. Di Mauro, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, by means of a notice of transferee liability, determined that petitioner was the transferee of Payton Courtney (deceased), transferor to the extent of $ 45,000. Respondent also determined that the transferor had deficiencies in income tax and additions to tax, as *396 follows: Taxable Year
Income Tax
Addition to Tax-Sec. 6653(b) [1]
1978
$ 20,881.36
$ 10,443.68
1979
32,575.39
16,287.70
1980
27,248.90
13,624.45
1981
20,502.18
10,251.09
By means of a motion granted March 21, 1988, respondent amended his answer alleging transferee liability to the extent of $ 60,000 rather than the $ 45,000 set forth in the notice of transferee liability. Respondent also amended his answer to allege additions to tax under sections 6651(a) and 6653(a) in the alternative, if we should not find "fraud" under section 6653(b). Petitioner conceded on brief that the transferor was liable for the tax liabilities set forth in the notice of transferee liability. The issues presented for our consideration are: (1) Whether the transferor was insolvent at the time of the transfer of property to the transferee; (2) whether said transfer was a "fraudulent conveyance;" and (3) if petitioner is a transferee, the fair market value of the *397 property transferred which may limit the amount of transferee liability. FINDINGS OF FACT Rosemary Burns ("petitioner" or "transferee"), who was single at all times pertinent to this case, resided at 849 West Wrightwood, Chicago, Illinois, at the time the petition was filed to commence this case. Payton Courtney ("transferor" or "Courtney") knew petitioner while attending high school and became reacquainted with her after she became divorced during the early 1970's. Petitioner and Courtney were engaged to be married. Courtney had one brother in the Chicago area, but they were not close and did not visit or communicate with each other. Courtney also had a sister in Florida, but he was not in contact with her. Courtney was in poor health during the late 1970's and early 1980's. During 1979 Courtney had an emergency ulcer operation and came close to death at that time. On June 5, 1980, Courtney established a land trust and named petitioner as beneficiary. Courtney placed his residence and business premises in the trust. At the time of the transfer Courtney was aware of unreported and unpaid obligations to the United States of America. The transfer into trust was made without *398 consideration passing between Courtney and petitioner. Courtney transferred the subject property to petitioner because he did not want his family to have it. The property consisted of a residence and adjacent land. Courtney's living expenses were modest. Petitioner would visit Courtney's residence and business area every Saturday, and she was familiar with his business activity. Courtney's business activity concerned precious metals. He purchased precious metals and other materials that had some amount of precious metals in them. Specifically, Courtney purchased light sensitive film, sludge and photographic fixer chemicals, all of which had some extractable silver in them. One source of the film, fixer and sludge was from hospital or x-ray laboratories where film and chemicals were purchased and picked up as part of an ongoing business relationship. The film was stored in 55-gallon drums which weighed 400 to 500 pounds each. Fixer was stored in 1-gallon containers. Sludge was stored in 5-gallon buckets weighing about 60 pounds each. Courtney would then proceed to chemically or mechanically remove the silver from the materials and place it in bags weighing 20 to 30 pounds, *399 which eventually would be sold for the value of the precious metals value. At any particular time Courtney would have on hand 20 to 30 barrels of film, 10 to 15 buckets of sludge and about 10 bags of silver. During 1980 a 55-gallon barrel of film had a value approximating $ 2,000. Sludge sold for about $ 8 per pound during 1980. Courtney also saved or collected silver coins and bullion and late in 1979 possessed about 25 to 50 pounds of silver. The market price of silver on June 5, 1980, was $ 15.75 per troy ounce. No books and records were maintained for this business. Courtney filed his 1978 and 1979 Federal income tax returns on July 15, 1980, which was subsequent to a contact by an Internal Revenue Service collection officer. For the taxable years 1978 and 1979 Courtney did not report, on the returns filed July 15, 1980, the following gross receipts, cost of goods sold and taxable income: Taxable
Cost of
Year
Gross Receipts
Goods Sold
Taxable Income
1978
$ 133,758.42
$ 84,635.01
$ 49,123.41
1979
167,969.91
120,306.89
47,663.02
As of June 5, 1980, Courtney had unreported and unpaid income tax, additions to tax and accrued *400 interest totaling $ 48,802.23 [2] for his 1978 and 1979 taxable years. Courtney had no other outstanding liabilities as of June 5, 1980. On March 29, 1983, Courtney was killed in connection with "a home invasion." No personal representative was appointed to administer Courtney's estate and no formal probate proceedings were instituted in his state of residence and domicile. Petitioner paid for Courtney's funeral and no financial assistance was offered by Courtney's brother or sister. At the time of issuing the notice of transferee liability, respondent determined the value of the subject realty to be $ 45,000 and, accordingly, limited his determination of petitioner's transferee liability to $ 45,000. Shortly before trial respondent was granted leave to amend his answer to allege increased value and transferee liability to the amount of $ 60,000. Leonard Felker (Felker), at the time of trial, had been an appraiser for Internal Revenue Service for 8 years. Prior to his employment by respondent, Felker had practiced out of his home as a real estate appraiser for about 20 years. Felker does not hold a college degree, but attended real estate *401 courses during the period 1948 through 1952. Felker has not testified as an expert witness since about 1950 and only had limited experience before that time. In Felker's opinion the real property, including improvements, had a value of $ 60,000 on June 5, 1980. Felker did not effectively take into account: (1) The condition of the improvements on June 5, 1980; (2) one of the buildings on the land had been torn down shortly before the transfer due to fire damage; (3) the landscaping was poor; (4) the front portion of the lot was filled with bricks and cobblestones; (5) several buildings in the immediate area had been demolished by fire; (6) the structure was in need of storm windows, a new front porch, hot water tanks and space heaters, roof, front doors and gates; and (7) Courtney had purchased the realty, including two structures, for $ 25,000 around 1970; (8) the real estate market had been adversely affected by high interest rates during 1979 and 1980; (9) the lot immediately to the south was vacant; and (10) the internal condition of the property. The realty in issue had a value of no more than $ 45,000 on June 5, 1980. Courtney had the following assets and liabilities, before *402 and after the transfer of the realty, into trust on June 5, 1980: BEFORE TRANSFER
AFTER TRANSFER
ASSETS
Cash
$      (0.96)
$     699.04
Truck
2,500.00 2,500.00
Real Estate
45,000.00 -0-   Net profit to 6/5/80
17,505.39 17,505.39
Silver inventory [3]
100,000.00 100,000.00
Total Assets
$ 165,004.43 $ 120,704.43
LIABILITIES
Federal Taxes:
Income Tax
$  37,438.62 $  37,438.62
Additions to tax
9,360.16 9,360.16
Accrued Interest
2,003.45 2,003.45
Total Liabilities
$  45,802.23 $  48,802.23
EXCESS OF ASSETS OVER
LIABILITIES
$ 116,202.20 $  71,902.20
Courtney was not insolvent either immediately *403 before or after the transfer of the subject realty on June 5, 1980. OPINION The issues for our consideration center about whether petitioner is a transferee within the meaning of section 6901. That section enables the respondent to collect unpaid taxes of a transferor from the transferee of the transferor's assets. . The burden of proving transferee liability is upon respondent. Section 6902(a); Rule 142(d). To establish transferee liability, respondent must prove the following elements: 1. A transfer of property occurred. 2. The transfer was without adequate consideration. 3. The transferor was insolvent at the time of the transfer or was rendered insolvent by the transfer. 4. The value of the property transferred. 5. The transferor has not paid the tax liability. ; . The existence and extent of the transferee liability is determined under the law of the state in which the transfer occurred. . Transferee liability *404 in Illinois may [4] be established under Ill. Rev. Stat. ch. 59, par. 4 (1987) (a fraudulent conveyance statute), which provides: Every gift, grant, conveyance, assignment or transfer of, or charge upon any estate, real or personal, or right or thing in action, or any rent or profit thereof, made with the intent to disturb, delay, hinder or defraud creditors or other persons, and every bond or other evidence of debt given, suit commenced, decree or judgment entered, with like intent, shall be void as against such creditors, purchasers, and other persons. Under Illinois case law fraudulent conveyances have been divided into the categories of "fraud in fact" and "fraud in law." "Fraud in fact" involves circumstances where consideration passed between the parties. Proof of "fraud in fact" requires a showing of specific intent to defraud. Conversely, "fraud in law" conveyances do not involve consideration and intent to defraud is immaterial and presumed from the circumstances. ; *405 ; . See also , affg. sub nom. . The absence of consideration in this case leads us to consider whether respondent has shown, under Illinois law, a fraudulent conveyance under the standards for "fraud in law." Respondent must show three elements to establish "fraud in law": (1) A voluntary gift; (2) an existing or contemplated indebtedness against the debtor; and (3) the failure of the debtor to retain sufficient property to pay the indebtedness. . As to the first two requirements, there is no dispute about a voluntary gift without consideration and indebtedness against the transferor. The only aspect in dispute is whether the transferor "retain[ed] sufficient property to pay the indebtedness" or, in other words, was insolvent or rendered insolvent by transfer of *406 the realty. We have found that the transferor was solvent both before and after the transfer of the realty in question. That being established, petitioner must prevail. To reflect the foregoing, Decision will be entered for the petitioner. Footnotes
1. Section references are to the Internal Revenue Code of 1954 as amended and in effect for the years or period in question and rule references are to this Court's Rules of Practice and Procedure.↩
2. See note 3, infra.↩
3. Although an average of our findings regarding the film, sludge, silver flake, coins and bullion would have exceeded $ 100,000, we have used $ 100,000 for purposes of simplicity. The remainder of the figures used in this schedule, with the exception of the value of the realty, were taken from the respondent's agent's testimony and summary (Respondent's Exhibit I).↩
4. Other methods have been used to establish transferee liability under Illinois law. See, e.g., .↩